# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. Nos. 1710001749 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| TIMOTHY D. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 21, 2020
Decided: November 2, 2020

## ORDER

## DEFENDANT'S MOTION TO MODIFY SENTENCE PURSUANT TO RULE 35(b): DENIED

## DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RULE 61: DENIED

Mr. Jones has engaged in a prolific, *pro se* letter writing campaign seeking redress for a vague list of grievances stemming from his guilty plea and sentence in a murder case.

1.      The facts giving rise to the charges against Mr. Jones are quite brutal. Rashawna Weathers was murdered by stabbing and left for dead in a porta-potty in the Kirkwood Park off East 11th Street in Wilmington.   Police followed a trail of blood from the crime scene along the 1300 block of East 16th Street to an apartment building where the Defendant resided.   They also found the Defendant in the

1

neighborhood, with a bandaged right hand, which he explained was the result of a laceration from a fight with his girlfriend a couple of days earlier. Surveillance cameras identified the Defendant walking away from Kirkwood Park on the night Rashawna was killed, with an apparent injury to his right hand.

2.    The Defendant was on probation at the time of these offenses as a result of a different assault in 2004 in which he stabbed a different woman. He had spent 10 years in jail for that offense and was on the street for less than 2 years before he stabbed and killed Ms. Weathers, who left behind three minor children.

### RULE 35 MOTION TO CORRECT THE SENTENCE

3.    After indictment for Murder First Degree and related offenses, the parties negotiated a plea agreement under which Jones would tender a guilty plea to Murder Second Degree and a weapons offense. The plea agreement stated explicitly that "There is a joint sentencing recommendation of 30 years of unsuspended Level V time."

4.    Murder Second Degree is a Class A felony. Per 11 *Del. C.* § 4205(b)(1), the sentence for a Class A felony is "not less than 15 years up to life imprisonment to be served at Level V."[1]

---

[1] 11 *Del. C.* § 4205(b)(1).

5. The Truth in Sentencing Guilty Plea form submitted in connection with Jones' tendered guilty plea mistakenly recites that the "statutory penalty" for Murder Second Degree is "15-25" years' imprisonment. That is not the statutory penalty. The statutory penalty is 15 years to life.[2]

6. In fact, the Court imposed the jointly agreed upon sentence, capping the Defendant's Level 5 sentence at 30 years. The Court imposed 5 years on the weapons offense and 30 years on the Murder Second Degree count, suspended after 25 years. Thus, the Level 5 time imposed was both consistent with the plea agreement and well within the statutory maximum for the charges.

7. The Court did impose suspended time at the back end of the Level 5 sentence for the murder count. On the murder count, the Court imposed 30 years at Level 5, suspended after 25 years at Level 5, for 5 years at Level 4, suspended after 6 months at Level 4 for 2 years at Level 3 probation. This is a standard "flow down" sentence that does not implicate Level 5 imprisonment except in case of violation of the terms of probation.[3]

---

[2] Exactly where defense counsel came up with "15-25" as the statutory range is a bit mysterious, but the SENTAC guidebook does provide that while the presumptive, SENTAC guideline sentence for a Class A felony such as murder second degree is 15 years, when the offense committed while the defendant is on release from another crime, such as defendant was (the prior stabbing), the SENTAC presumptive sentence is indeed 15-25 years' imprisonment. Needless to say, the SENTAC presumptive sentence is not the statutory maximum sentence.

[3] By the terms of 11 *Del. C.* § 4201(l), the Court must impose a minimum of 6 months of probation at the end of any Level 5 sentence in excess of 1 year.

3

8. Defendant complains in his many and varied *pro se* entreaties that the Level 4 and Level 3 probation "tails" at the end of the murder second degree sentence are not only outside of his bargain with the State, they are illegal as a matter of law because the maximum sentence for murder second degree is 25 years. As discussed above, the Defendant is simply wrong that the sentence is illegal. Under the Code, any sentence up to and including a life sentence would have been "legal."

9. Moreover, the parties made no agreement whatsoever concerning Defendant's post Level 5 sentence. The only agreement was not to recommend less (or more) than 30 years at Level 5. The probation tail at the end of the Level 5 sentence does no violence to the law, the agreement or the spirit of the agreement reached by counsel.

10. The only point Defendant makes that is worthy of consideration is the defect in the Truth in Sentencing Guilty Plea form, which incorrectly identifies 25 years as the maximum potential sentence for Murder Second Degree. The Defendant does not argue that the defect in the paperwork caused him to plead guilty; rather he says only that he cannot be sentenced to probation following the sentence because it is illegal.

11. To determine how and whether the defect in the form affected the actual voluntariness of the plea and its centrality in the plea negotiations, the Court has reviewed the docket carefully. Doing so reveals that the parties were in a pitched

4

battle of plea negotiations – although, given the evidence, the defense was hardly in a strong position to "battle." This was a rare case in which the Court addressed counsel and the Defendant at final case review and understood the parties' positions were shifting at that time. The Court gave the parties more time to work out their differences and ultimately arrive at the 30 year sentencing agreement signed that day. The colloquy was detailed and explicit and Defendant makes no claim that it was in any way deficient.

13. Because the Court concludes that the sentence was legal and entirely consistent with the bargain arrived at between the Defendant, his attorney and the State, the Court will neither modify it nor find counsel ineffective for failing to litigate the legality of the sentence when it was plainly legal.

**REMAINING CLAIMS UNDER RULE 61**

14. This resolves Defendant's two motions for modification of sentence, filed in August and September, 2019, each alleging the same error. While those motions were pending, the Defendant also filed, *pro se*, a September 2019 motion for post-conviction relief under Super. Ct. Crim. R. 61. Much of that motion deals again with his sentence for Murder Second Degree, which the Court has resolved above. Those arguments are therefore moot.

15. As to the remaining claims, Rule 61(e)(3) provides that appointment of counsel for defendant is not automatic in guilty plea cases and counsel will only be

appointed when the claim raises "a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty."[4] Exactly which claims are "substantial" and which ones are not is not further defined in the Code. But clearly, it is not enough to raise general allegations of ineffectiveness to trigger a right to appointed counsel. Rather, it must appear from the pleadings that counsel's alleged ineffective assistance was so prejudicial to a defendant's right to a fair trial as to undermine confidence in the outcome of the proceedings.[5]

16.     But that is what we have here. Defendant alleges that his previous appointed attorney failed to "come up with a defense strategy" and failed to "subject the prosecution's case to meaningful adversarial testing."[6] Defendant does not, however, point to any specific error made by trial counsel that might have altered the outcome. The outcome was a guilty plea. To the extent the ground asserted is a failure to investigate evidence that Defendant was actually innocent, Defendant has never asserted his actual innocence: he pled guilty. In open Court. It is not up to the Court to conjure up what Defendant's counsel might have discovered that would have changed the outcome of these proceedings.

17.     In Defendant's *pro se* memorandum of law in support of his Rule 61 motion, Defendant ventures off the Rule 61 pleading itself to make additional claims

---

[4] Rule 61(e)(3).
[5] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[6] Motion, D.I. 31, Grounds 1 and 2.

of ineffective assistance, alleging a failure to investigate, a failure to move to suppress, and a failure to challenge some of the evidence produced in discovery. The Court inquired of the State and defense counsel about the specific items of evidence alluded to in Defendant's memorandum. From the responses, it is clear that the State provided more in discovery than the direct evidence of Defendant's guilt, perhaps in an effort to provide defense counsel with any even arguable *Brady* Material.[7] For example, Defendant's memorandum appended photos of an automobile and a shirt with blood stains on them, arguing that these were not challenged by defense counsel. The State explains that these photos were related to a different assault that took place in the same neighborhood as the Defendant's residence within a few days of the homicide. Thus, it is not surprising that defense counsel would not move to suppress or otherwise challenge the evidence.

18. The record shows a defendant quite aware of his right to counsel and what his counsel was doing to further his interests. Defendant and his counsel drove a bargain with the State in a murder that could have easily resulted in a natural life sentence. He received the benefit of his bargain and has not even suggested that he is not guilty of the offense.[8] Barring prejudice, Defendant has not shown cause for relief under Rule 61.

---

[7] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[8] *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a claim of ineffective assistance requires a showing that counsel's performance fell below an objective

7

Based on the foregoing, Defendant's Motion to Correct the Sentence is DENIED and Defendant's Motion under Rule 61 is **DENIED**.

**IT IS SO ORDERED**.

_____
Judge Charles E. Butler

---

standard of reasonableness and the deficiency prejudiced defendant's right to a fair trial). *See also Cooke v. State*, 977 A.2d 803 (Del. 2009); *Brooks v. State*, 40 A.3d 346 (Del. 2012); *Hoskins v. State*, 102 A.3d 724 (Del. 2014).

8